1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| TOMMY LEE WILLIAMS, Inmate #21114692, | Case No.: 23-cv-241 TWR (DDL) |
|---|---|
| Plaintiff, | **ORDER (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*; (2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b); AND (3) DENYING MOTION TO APPOINT COUNSEL** |
| vs. | |
| LT. BRANT #2880 et al., | |
| Defendants. | (ECF Nos. 2, 3) |

Tommy Lee Williams ("Plaintiff" or "Williams"), currently incarcerated at San Diego Central Jail ("SDCJ"), is proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, "Compl.") He has also filed a Motion to Proceed *in Forma Pauperis* ("IFP") and a Motion to Appoint Counsel. (ECF Nos. 2–3.)

## I.    Motion to Proceed IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

/ / /

/ / /

$402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," regardless of whether his action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1), (2); *Bruce v. Samuels*, 577 U.S. 82, 84–85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *see Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1), (4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his IFP Motion, Williams has submitted a certified copy of his trust account statement and a prison certificate pursuant to 28 U.S.C. § 1915(a)(2) and Local Civil Rule 3.2.  (*See* ECF No. 3 at 5–7); *see Andrews*, 398 F.3d at 1119.  These documents show that Williams had an available balance of $1.13 at the time of filing.  (*See* ECF No. 3 at 5–7.)  The Court thus **GRANTS** Williams's Motion to Proceed IFP.  (ECF No. 3.)

---

[1]      In civil actions, except for applications for a writ of habeas corpus, civil litigants bringing suit must pay the $350 statutory fee in addition to a $52 administrative fee.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  The $52 administrative fee, however, does not apply to persons granted leave to proceed IFP.  *Id.*

The Court, however, declines to exact the initial filing fee because Williams's trust account statement indicates he may have "no means to pay it." *Bruce*, 577 U.S. at 84. Instead, the Court directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") or his designee, to collect the entire $350 filing fee required by 28 U.S.C. § 1914 pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1) and forward them to the Clerk of the Court. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 84–85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

## II.   Screening Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)

### A.   *Legal Standard*

Because Williams is a prisoner proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, if it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from such relief. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

As for the substantive law, § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citation omitted).

### B.   *Plaintiff's Factual Allegations*

Williams is a convicted prisoner who was transferred from state prison to the SDCJ in August of 2021 for resentencing. (Compl. at 13.) In prison, Williams was receiving mental health services for post-traumatic stress disorder ("PTSD"), depression, panic attacks, and anxiety. (*Id.*) After about a week at SDCJ, Williams alleges he was transferred to the George Baily Detention Facility ("GBDF") where he was housed in a thirty-man

/ / /

dorm which he describes as "a living hell." (*Id.*)  Williams states he could not cope with the conditions in the dorm and on August 25, 2021, he attempted suicide. (*Id.* at 13–15.)

Following the suicide attempt, Williams contends he received no mental health follow-up and was transferred to the Vista Detention Facility ("VDF"). (*Id*. at 15.)  At VDF, he alleges he told staff he had attempted suicide but was told there was no report of the incident. (*Id.*)  He claims he submitted numerous grievances alleging he was not receiving mental health services or dayroom and shower access, inmates were making alcohol with the help of deputies, gang members were running the dayroom, an inmate had come to his cell and masturbated in front of him, and inmates were threatening to kill him. (*Id.* at 9–13, 30.)

Williams explains that in November 2021, deputies tried to transfer him from VDF back to the thirty-man dorm at GBDF—this upset Williams because the transfer would worsen his PTSD and other mental health issues. (*Id*. at 13–14.)  Williams allegedly told the deputies he would not go back to the dorm and that he needed to go to the SDCJ because he was representing himself in state and federal court and the SDCJ had a law library. (*Id.* at 6–7.)  Although not clear from his Complaint, it appears that at this point Williams was accused of threatening deputies and put in Administrative Segregation ("Ad-Seg"). (*Id.*)  Williams alleges that the incident report regarding the threats was falsified. (*Id.*)

Williams also alleges that while at the SDCJ, he was unable to contact his attorney because the phone number was blocked, he was not provided with mental health services, was in lockdown twenty-three to twenty-four hours a day, stopped receiving his disability checks, and had no access to haircuts, yard time, or nail clippers. (*Id.*at 18–19.)  He also states that deputies at the SDCJ racially harassed him, threatened him and other inmates, taunted him by speaking to him over the loudspeaker all night, turned off the lights, did not respond to requests for medical and mental health help, and banged on his cell wall all night. (*Id.* at 27–30.)

/ / /

/ / /

*C.    Discussion*

       *1.    Eighth Amendment*

The Eighth Amendment requires that inmates have "ready access to adequate medical care." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). As a result, "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

       a.    VDF Defendants Brant, Garcia, Aguinaga, and Iwatsu (Counts One, Two, Three and Four)

Williams has not plausibly alleged an Eighth Amendment claim against Defendants Brant, Garcia, Aguinaga, or Iwatsu because he has not explained what actions any of those defendants did or did not take that violated his Eighth Amendment rights. "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). Thus, a Plaintiff must, at minimum, allege some factual content to describe how each individual person he seeks to sue violated the Constitution, and set forth specific facts as to each individual defendant's wrongdoing. *See Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

Williams alleges Brant and Garcia told him he would be transferred to SDCJ from VDF after Williams explained he needed to be transferred there because SDCJ had a law library. (Compl. at 6, 9.) When Williams arrived at booking, however, the paperwork showed he was being transferred to GBDF. (*Id.* at 6.) While Williams states he did not want to be transferred to GBDF because it is where he tried to commit suicide, he alleges no facts which plausibly suggest Brant or Garcia were responsible for his transfer to GBDF

or, if they were responsible, that they knew about his suicide attempt and consciously disregarded a risk to Williams's safety by transferring him there. *See Toguchi*, 391 F.3d at 1057. Accordingly, Williams's claims against Brant and Garcia must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) for failure to state a claim.

Williams alleges Aguinaga witnessed Brant telling him he would be transferred to SDCJ. (Compl. at 7.) He also claims Aguinaga came to his cell with grievance forms Williams had submitted about his lack of access to a shower, phone calls, and the dayroom and told Williams he "should not write up [his] deputies and give it to medical and [mental health]." (*Id.*) None of these allegations plausibly allege Aguinaga personally violated Williams's constitutional rights by "[knowing] of and disregard[ing] an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057 (citation omitted). Williams's claims against Aguinaga must also be dismissed for failure to state a claim.

Finally, as to Defendant Iwatsu, Williams alleges only that he was "with Lt. Brant and Sgt. Aguinaga the day of the incident . . . ." (Compl. at 8.) These allegations also do not plausibly allege Iwatsu personally violated Williams's constitutional rights by "[knowing] of and disregard[ing] an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057 (citation omitted). This claim then must also be dismissed for failure to state claim.

As to Williams's claim that his Eighth Amendment rights were violated when he was "put in Ad-Seg [for] a false incident report saying [he] was threatening to fight every inmate [he] lived with and threatening deputies," also fails to state a claim. (Compl. at 6.) "[D]istrict courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983." *Richardson v. Tuman*, No. 1:18-cv-01166-EPG-PC, 2019 WL 669569, at *5 (E.D. Cal. Feb. 19, 2019) (collecting cases); *Butts v. Ibarra*, No. 1:20-cv-00273-EPG-(PC), 2020 WL 4676375, at *4 (E.D. Cal. Aug. 12, 2020); *Harper v. Costa*, No. CIV S-07-2149 LKK DAD P, 2009 WL 1684599, at *2–3 (E.D. Cal., June 16, 2009), / / /

*aff'd*, 393 F. App'x. 488 (9th Cir. 2010).  Accordingly, the Court **DISMISSES** Plaintiff's claim regarding any false incident report.

> b.  VDF Defendants Dias, Nares, Domkuct, Grace, and Liu (Counts Five, Six, Thirteen, Twenty-One, and Twenty-Three)[2, 3]

Williams's allegations against Defendants Dias, Nares, Domkuct, and Grace, center around his lack of access to a shower, the dayroom, and threats by other inmates at VDF. (Compl. at 9–13, 30–31.)  He claims the dayroom at VDF was being "r[un] by the inmates 24/7 and when [he] did come out for dayroom it was 2:00 a.m." (*Id.* at 10.)  Because of medication he was taking for sleep and his PTSD, he would often be unable to get out bed for his dayroom time, and he suffered from "nightmares, anger, feeling jumpy, self-blame, suicidal thoughts, physical aches and pains, [and] feeling alienated and alone." (*Id.*)  He also alleges deputies helped inmates make wine, and that one inmate came to his cell door drunk and masturbated in front of him. (*Id.*)  Williams reported the incident and asked for a PREA (Prison Rape Elimination Act) report, but nothing happened. (*Id.*)  Williams alleges he wrote grievances about the dayroom situation, which resulted in inmates threatening to kill him because deputies told the shot caller[4] for a Mexican gang that he was writing grievances. (*Id.* at 30.)  Specifically, Williams alleges the inmate would slide

---

[2]      Although Williams alleges Dias and Nares violated his due process rights in addition to his Eighth Amendment rights, when a specific constitutional Amendment "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment . . . must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality) (citation omitted).  Williams's allegations against Dias and Nares are most properly interpreted as Eighth Amendment claims.

[3]      On April 21, 2023, Williams filed an additional document, which lists three new defendants and four new counts. (ECF No. 4.)  He labeled the new counts one through four. (*Id.*)  Williams listed twenty-two counts in his Complaint. (*See* Compl.)  Therefore, to avoid any confusion, the Court will refer to the counts in ECF No. 4 as Counts Twenty-three through Twenty-six.

[4]      A "shot caller" is a high-level prison gang member who determines who the gang can target with violence.

letters under his cell door, threatening to kill him and saying he was going to "green light"[5] him.  (*Id.*)

In Count Five, Williams claims Dias told him that he would be evaluated by classification in seven days.  (Compl. at 11.)  This is the only allegation involving Dias in the Complaint.  But, this is not sufficient to state a plausible Eighth Amendment claim because Williams has not explained what Dias did or did not do that shows she acted with deliberate indifference, that is, that she "kn[ew] of and disregard[ed] an excessive risk to [his] health and safety." *Toguchi*, 391 F.3d at 1057 (citation omitted).  Moreover, there is no constitutional right "to a particular classification status." *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

In Count Six, Williams alleges Nares "was the deputy who was mostly running module N2," and he "knew everything that was going on in the module." (Compl. at 11.) Williams makes general allegations about not being able to shower and inmates making alcohol in the module and states he submitted grievances about the wine making, inmates getting drunk, and inmates using racial slurs against him. (*Id.* at 11–12.)  But he makes no specific allegations as to any actions Nares took or did not take that show Nares acted with deliberate indifference—that he "kn[ew] of and disregard[ed] an excessive risk to [his] health and safety." *Toguchi*, 391 F.3d at 1057 (citation omitted).

Williams also alleges in Count Six that Domkuct "would sometimes be in [his module] and [he] would tell her [he] need[ed] to shower," to which she replied, "if you do not shut up, I['m] never going to let you show[er]." (Compl. at 12–13.)  He asserts he "never got to shower." (*Id.* at 13.)  But to state an Eighth Amendment claim for a denial of basic necessities, Williams must allege: "(1) the defendant prison official's conduct deprived him . . . of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety." *Owens v.*

---

[5]   A "green light" means permission has been given by the shot caller to target an inmate.

*McCament*, No. 2:20-cv-2469-EFB P, 2021 WL 84400, at *2 (E.D. Cal. Jan. 11, 2021) (citing *Farmer*, 511 U.S. at 834). "While the Ninth Circuit has not made any definitive determination as to how many showers are required per week for inmates, it has certainly not held that daily showers are required." *Hernandez v. Olmos*, No. 1:11cv01495 LJO DLB PC, 2013 WL 5718566, at *3 (E.D. Cal. Oct. 18, 2013), *report and recommendation adopted by* 2013 WL 6230269 (E.D. Cal. Dec. 2, 2013); *Ontiveros v. Eldridge*, No. 2:19-cv-2445 KJN P, 2020 WL 1853003, at *2 (E.D. Cal. Apr. 13, 2020). Williams's Complaint does not allege Domkuct personally denied him showers, only that she threatened to do so, nor does it allege facts showing she acted with deliberate indifference.

Further, although particularly egregious verbal harassment "calculated to and . . . caus[ing] [a prisoner] psychological damage" may be sufficient to state a claim for a constitutional violation, *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998), threats are not generally sufficient to state an Eighth Amendment claim, *see Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (stating "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong"). Likewise, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). Williams does not state a plausible § 1983 claim then against Defendant Domkuct.

As to Defendant Grace, who he names in Count Thirteen, Williams makes no specific allegations regarding what actions Grace did or did not take that violated his Eighth Amendment rights. (Compl. at 30–31.) He does, however, generally allege he wrote a grievance about a Mexican gang "running" the dayroom and that the deputies told the shot caller that Williams wrote a grievance about them, so the Mexican gang member started coming to his door, sliding letters under his door, threatening him, calling him a "n ---er," and stating he was going to green light (kill) him. (*Id.* at 30.)

/ / /

The Eighth Amendment requires prison officials to protect inmates from violence," *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer*, 511 U.S. at 833), and labeling a prisoner a "snitch" in the presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989).  If a prisoner faces a substantial risk of serious harm, he need not wait until he actually suffers an attack before asserting a deliberate indifference or threat-to-safety claim.  *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").  Here, however, Count Thirteen does not state an Eighth Amendment claim because Williams has not set forth specific facts as to any individual defendant's wrongdoing.  He has alleged only that unidentified VDF "deputies," who are not named as Defendants, told Mexican gang members about his grievances, resulting in threats to his life.  (Compl. at 30.)  He has not alleged sufficient factual content to describe what any individual person he seeks to sue did or did not do that violated the Constitution by failing to protect him against present or future violence.  *See Iqbal*, 556 U.S. at 676–77; *Ewing*, 588 F.3d at 1235.  And without any specific allegations against Defendant Grace, Williams has failed to state a plausible § 1983 claim against her.

Finally, in Counts Twenty-One and Twenty-Three, Williams alleges Defendant Liu made racist comments to him when he asked him to turn the television back on and for Liu's ARJIS number.[6]  (ECF No. 1-3 at 4; ECF No. 4 at 1–3.)  As noted above, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."  *Oltarzewski*, 830 F.2d at 139.  Williams thus does not state a plausible § 1983 claim against Defendant Liu.

/ / /

/ / /

---

[6]      "ARJIS" stands for the Automated Regional Justice Information System.  *See* ARJIS, https://www.arjis.org/SitePages/WhatIsARJIS.aspx (last visited May 4, 2023).

c.   SDCJ Defendants Mace, Gonzales, Powell, Garcia
Avenila, Unknown Deputy, Williams, and Hutchins
(Counts Eight, Nine, Ten, Thirteen, and Nineteen)

Williams also alleges Defendants Mace, Gonzales, Powell, Garcia Avenila, and an unnamed deputy violated his Eighth Amendment rights while he was incarcerated at the SDCJ. (Compl. at 27–29.) He alleges Mace came into his module and antagonized another inmate by asking that inmate if he remembered "when [he] beat the f-ing brakes off [him]." (*Id.* at 27.) Williams also claims Gonzales and Powell "would taunt [him] through the speak[er] . . . all through the night." (*Id.* at 28.) The actions Williams attributes to these Defendants amount to, at most, "[v]erbal harassment or abuse . . . [which are] not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski*, 830 F.2d at 139. Williams therefore fails to state a plausible § 1983 claim against Defendants Mace, Gonzales, and Powell.

As to Garcia Avenila and an unknown deputy, Williams claims they banged on his cell wall all night and Garcia Avenila covered his name tag when he walked by Williams's cell. (*Id.* at 30.) The Ninth Circuit has found that under certain circumstances, noise levels in prison may inflict pain without penological justification. *See Keenan*, 83 F.3d at 1090; *Deeds v. Aranas*, No. 3:15-cv-00547-RCJ-VPC, 2017 WL 2661639, at *5 (D. Nev. June 20, 2017). But here, Plaintiff has not alleged that he incurred any harm as a result of his exposure to the allegedly excessive noise that occurred during the one night Defendant Garcia Avenila and the unknown deputy banged on the walls. *See Deeds*, 2017 WL 2661639, at *5. Williams therefore fails to state a plausible § 1983 claim against Defendant Garcia Avenila and the unknown deputy.

Williams also alleges he asked Defendants Williams and Hutchins for toilet paper and had to wait three hours before it was given to him. (ECF No. 1-3 at 1.) These allegations do not state a plausible Eighth Amendment claim because the deprivation of toilet paper was not sufficiently serious or lengthy. "[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and

wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). (citation omitted)  But to "the extent that . . . conditions are [merely] restrictive [or] even harsh, they are part of the penalty that criminal offenders pay for their offenses against society," and do not offend Eighth Amendment principals.  *Id.* at 347.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities'" like food, clothing, shelter, medical care, and safety are "sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Allegations involving insufficient amounts of toilet paper or a short-term deprivation of sanitary supplies such as toilet paper, on the other hand, "do not impinge on a constitutionally protected basic human need and do not rise to the level of cruel and unusual punishment."  *Obataiye-Allah v. Gilbertson*, No. 2:19-cv-00135-JR, 2019 WL 2303844, at *2 (D. Or. May 29, 2019); *see Lopez v. Cate*, No. 1:10-cv-01773, 2013 WL 239097, at *8 (E.D. Cal. Jan. 22, 2013) (deprivation of toilet paper, a toothbrush, and tooth powder for seven days does not violate the Eighth Amendment).

### 2.  Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. O'Connor*, 515 U.S. 472, 484 (1995) (citations omitted), *overruled in part on other grounds by Edwards v. Balisok*, 520 U.S. 641 (1997).  If an inmate identifies a protected liberty interest of which he is going to be deprived, due process requires: (1) twenty-four-hour advanced written notice of the charges against him, (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence in his defense when"

doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or the matter is complex, and (5) a "sufficiently impartial" factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974), *holding limited by Sandin*, 515 U.S. at 485–86.

### a.   Defendants Garcia, Dias, and Nares

Williams alleges Garcia violated his due process rights when Garcia told him "he would have classification move [him]" to the SDCJ so he could access the law library, but the transfer did not occur. (Compl. at 9.) Although federal due process concerns may be implicated if a prisoner alleges a dramatic departure from the standard conditions of confinement, *Sandin*, 515 U.S. at 484–86, Williams has not done so here. There is no "abstract, freestanding right to a law library," *Lewis v. Casey*, 518 U.S. 343, 351 (1996), nor "to a particular classification status." *Hernandez*, 833 F.2d at 1318. Moreover, Williams has not alleged any factual content describing what Garcia personally did or did not do to violate his constitutional rights. *See Iqbal*, 556 U.S. at 676–77. Williams has thus failed to state a plausible due process claim against Garcia. And as noted, *see supra* p. 8 n.2, Williams's due process claims against Defendants Dias and Nares are better characterized as Eighth Amendment claims.[7]

### b.   Allegations Involving Ad-Seg

Williams appears to claim he was in Ad-Seg for almost a year "with no evaluations." (Compl. at 9–11.) A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation that "implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078

---

[7]     It is unclear to the Court whether Williams also seeks to bring a due process claim against Defendant Gonzales—Williams notes that Gonzales would turn the lights off while he was at his cell desk. (Compl. at 28.) To the extent Williams contends this is a violation of due process, he has not alleged that this is a dramatic departure from the standard conditions of confinement sufficient to establish a liberty interest or an atypical and significant hardship. *See Sandin*, 515 U.S. at 484–86.

(9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 484).  If the prisoner alleges facts sufficient to show a protected liberty interest or a sufficiently significant hardship, courts must next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Even assuming Williams has alleged facts sufficient to invoke a protected liberty interest under *Sandin* since he was in Ad-Seg for almost a year without further evaluations, he has not pled facts sufficient to plausibly show he was denied the procedural protections the Due Process Clause requires.  *See Iqbal*, 556 U.S. at 678; *Ramirez*, 334 F.3d at 860; *see also Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).  As previously noted, those procedures include: (1) written notice of the charges at least twenty-four hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases.  *See Wolff*, 418 U.S. at 563–71; *Serrano*, 345 F.3d at 1079–80.  Williams has not alleged facts to show that he was deprived of any of the *Wolff* procedures by any of the Defendants.  Accordingly, this claim requires *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

3. *Defendants San Diego Sheriff's Department; San Diego Central Jail; Sheriff's Department Mental Health and Jails; San Diego Classification; San Diego Internal Affairs; and Sheriff's Department Commissary (Counts Seven, Eleven, Fourteen, Eighteen, Twenty, Twenty-Two, and Twenty-Six)*

The San Diego County Sheriff's Department and its subdivisions, including the San Diego Central Jail, "Sheriff's Department Mental Health and Jails," "San Diego Classification," "San Diego Internal Affairs," and "S.D. Commissary," (*see* Compl. at 4–5, 13–19; ECF 1-3 at 2–3; ECF No. 4 at 1), are managed by and/or are departments of the County of San Diego and are subject to suit as "persons" under § 1983.  *Duarte v. City of Stockton*, 60 F.4th 566, 573 (9th Cir. 2023).  However, "a local government [and its

entities] may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  To bring a § 1983 claim against these Defendants, Williams must plead that the municipality's policy or custom caused a violation of his constitutional rights.  *See id.*  Specifically, he must allege that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

In Counts Seven and Fourteen, Williams alleges he was undergoing mental health treatment for PTSD and other mental health issues when he was transferred from prison to SDCJ and then GBDF.  (Compl. at 13–19.)  He claims he received no mental health evaluations or services while at VDF, SDCJ, or GBDF, despite his suicide attempt on August 25, 2021.  (*Id.* at 13–15.)  He explains that the suicide attempt resulted from the conditions at GBDF, and that he wrote many grievances to the mental health department about this lack of mental health care and the mental health issues he was having while housed in a thirty-person dorm at GBDF, which went unanswered.  (*Id.*)  He further alleges the San Diego Sheriff's Department, the Department's mental health division, and the San Diego Central Jail do not respond to grievances and that sheriff's deputies frequently throw grievances away.  (Compl. at 32; ECF No. 1-3 at 2.)  He claims inmates were given dirty razors, his disability checks have stopped being deposited into his trust account, he is in "lockup" twenty-three to twenty-four hours per day, and he has no access to haircuts, nail clippers or yard time.  (Compl. at 15, 17–19.)

In Count Eighteen, he claims his attorney's phone number was blocked by the jail.  (ECF No. 1-3 at 1.)  In Count Twenty-Two, he alleges the San Diego jails are not following Title 15, Division 3 of the California Code of Regulations, which governs, in part, prisoner's health care and health care grievances, and that they are making up their own rules.  (*Id.* 4); *see* Cal. Code Regs. tit. 15, §§ 3087–3087.12.  In Count Twenty-Six, he claims the Sheriff's Department Commissary is price gouging.  (ECF No. 4 at 1, 21.)

Finally, according to Williams, he was being treated for stage four melanoma while he was in prison, undergoing chemotherapy and radiation treatment there.  (ECF No. 1-3 at 2–3.) He alleges he had a dermatology appointment at the University of California, San Diego Medical Center and was prescribed medication for the condition on January 23, 2023, but has not received the medication while incarcerated and has received no follow-up medical care.  (*Id*.)

"[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (internal quotation marks and citation omitted).  "Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur."  *McDaniel v. Diaz*, No. 1:20-cv-00856-NONE-SAB, 2020 WL 7425348, at *22 (E.D. Cal. Dec. 19, 2020) (citation omitted).  Williams does not claim San Diego County has a policy or custom of denying prisoners medical and mental health care, ignoring grievances, refusing to deposit disability checks, blocking attorneys' phone numbers, or denying prisoners access to haircuts, nail clippers, and yard time.  Nor has he pled sufficient facts to plausibly allege San Diego County has any such custom or practice because he has not identified any specific acts by any individual defendant that violated his constitutional rights.  Accordingly, he has failed to state a claim against the San Diego Sheriff's Department and its various entities.

### 4. *Defendants San Diego Jail Deputies and Sgt. Chateigne (Counts Twenty-Four and Twenty-Five)*

Williams further alleges unnamed "San Diego Jail Deputies" violated his rights under the Health Insurance Portability and Accountability Act ("HIPAA") when they sat in on his mental health sessions.  (ECF No. 4 at 1, 5.)  Williams fails to state a plausible

§ 1983 claim, though, for two reasons: (1) he has not identified any particular individual deputies he is accusing of misconduct and (2) he has alleged no federal constitutional violation or that he was deprived of a right secured by a federal law.  *See Iqbal*, 556 U.S. at 676–77; *Tsao*, 698 F.3d at 1138 ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." (citation omitted)); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that [each defendant] was personally involved in the deprivation of his civil rights.").  Williams has not alleged a federal constitutional violation by the unnamed deputies.  Further, "HIPAA itself provides no private right of action."  *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) (quoting *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007)); *Spearman v. Sacramento County*, No. 2:21-cv-01289-JDP (PC), 2022 WL 1104230, at *1 (E.D. Cal. Apr. 13, 2022).

Williams also alleges Sgt. Chateigne violated his due process and Eighth Amendment rights by "covering for deputies who are very disrespectful" and by "not holding [them] accountable when writing grievances, making a judgment before reading the grievance, [and by] lying [and] changing [the] story."  (ECF No. 4 at 1, 7.)  But Williams has not stated a plausible § 1983 claim against Chateigne because "[a]n allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983."  *Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015) (citing *Ramirez*, 334 F.3d at 860).  Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure."  *Ramirez*, 334 F.3d at 860.

### 5.   *Defendants Deputy Saska and Unnamed Sergeant*

Williams names SDCJ Deputy Saska and an unnamed Sergeant as Defendants, (*see* Compl. at 2, 4), but nowhere in the body of his Complaint does he explain what actions Saska or the unnamed Sergeant took or failed to take that violated his constitutional rights.

An official can only be liable in a § 1983 action for his or her own misconduct. *See Iqbal*, 556 U.S. at 677. "A plaintiff must allege facts, not simply conclusions, that show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194; *see also Estate of Brooks*, 197 F.3d at 1248 ("Causation is, of course, a required element of a § 1983 claim."). In order to plead a viable § 1983 claim, Williams must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. He has not done so here. The Complaint contains no factual allegations with respect to Saska or the unnamed Sergeant. Accordingly, Williams has failed to state a plausible § 1983 as to those two Defendants.

## III. Motion for Appointment of Counsel

Williams has also asked this Court to appoint counsel. (*See* ECF No. 2.) There is no constitutional right to counsel in a civil case and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (citation omitted); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Exceptional circumstances exist where there is a showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Williams's Complaint demonstrates that while not formally trained in law he is capable of legibly articulating the facts and circumstances relevant to his claims. Because Defendants have yet to respond to the Complaint, a determination regarding the likelihood of success on the merits or Williams's ability to prosecute this matter is premature. Indeed, the Court has determined at this juncture that he has not stated a plausible § 1983 claim against any Defendant. Exceptional circumstances warranting appointment of counsel do not exist at this time. *See Agyeman*, 390 F.3d at 1103. The Court therefore **DENIES**

/ / /

Williams's request for appointment of counsel without prejudice to him renewing the request if he wishes to do so at a later stage of these proceedings.

## IV.   Conclusion and Order

Based on the foregoing, the Court:

1)   **DENIES** Plaintiff's Motion for Appointment of Counsel (ECF No. 2);

2)   **GRANTS** Plaintiff's Motion to Proceed *In Forma Pauperis* (ECF No. 3);

3)   **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and to forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

4)   **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

5)   **DISMISSES** Plaintiff's Complaint as to all Defendants for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); and

6)   **GRANTS** Plaintiff forty-five (45) days from the date of this Order to file an Amended Complaint correcting all the deficiencies of the pleading identified by the Court in this Order.  Plaintiff is advised that his Amended Complaint must be complete in itself without reference to his original Complaint.  Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not

re-alleged in an amended pleading may be considered waived if not repled).  Plaintiff's Amended Complaint must be entitled as his "First Amended Complaint," contain Civil Case No. 23-cv-0241-TWR-DDL in its caption, and comply both with Federal Rule of Civil Procedure 8 and Local Civil Rule 8.2.a.

In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of a form Complaint under the Civil Rights Act, 42 U.S.C. § 1983, for his use.

**IT IS SO ORDERED.**

Dated:  May 9, 2023

Honorable Todd W. Robinson
United States District Judge

3:23-cv-00241-TWR-DDL